FILED

02 SEP 30  PM 2: 46

U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

BOYCE L. TROTT, SR. and HELEN      ]
MARIE TROTT,      ]
     ]
        Plaintiff(s),      ]
     ]    CV-00-N-2627-S
     vs.      ]
     ]
SPRINT SPECTRUM, L.P.,      ]
     ]
        Defendant(s).

### Memorandum of Opinion

## I.  Introduction.

This case comes before the court upon review of the Report and Recommendation of the United States Magistrate Judge [Doc. # 36], entered May 21, 2002, regarding a motion for summary judgment filed by defendant Sprint Spectrum, L.P. ("SSLP"). [Doc. # 26.] The report recommended granting defendant's motion as to all claims.  After careful consideration of the brief in support of the motion for summary judgment [Doc. # 27]; the plaintiffs' response [Doc. # 31]; the defendant's reply submission [Doc. # 32]; the plaintiffs' objection to the Report and Recommendation [Doc. # 40]; the defendant's response to the objection [Doc. # 41]; and a *de novo* review of the record, the court adopts in part, and declines to adopt in part, the Report and Recommendation for the reasons that follow.

43

## II.     Standard.

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A factual dispute is genuine only if "a reasonable jury could return a verdict for the non[-]moving party."  *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991).  Furthermore, a factual issue will be considered genuine only if it has "a real basis in the record."  *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993).  In evaluating the argument of the moving party, the court must view all the evidence in the light most favorable to the non-moving party and "resolve all reasonable doubts about the facts in its favor."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).

## III.     Discussion.

The court adopts the factual background set forth in the Magistrate's Report and Recommendation.  [Doc. # 36, Report and Recommendation at 2.] The court further adopts the Report and Recommendation insofar as it recommends that summary judgment be granted with respect to the plaintiffs' claims for breach of contract,[1] fraud, negligence and wantonness, and invasion of privacy.   The court declines to adopt the Magistrate's recommendation that summary judgment be granted with respect to the claim seeking declaratory relief, for the reasons that follow.  Finally, the court has considered plaintiffs' argument with respect to an indirect trespass claim raised for the first time in its objection

---

[1] Because the court's analysis with respect to the breach of contract claims departs somewhat from the Magistrate's analysis, the court will briefly discuss its rationale for granting summary judgment with respect to those claims.

to the Magistrate's Report and Recommendation, and the court is of the opinion that the plaintiffs have not demonstrated good cause to amend the complaint almost two years after the deadline for adding causes of action has passed.

**A. Claim for Declaratory Relief.**

The plaintiffs, Boyce L. Trott, Sr. ("Mr. Trott") and Helen Marie Trott ("Mrs. Trott") (collectively, "the Trotts"), argue that the lease agreement they entered into with SSLP contains an ambiguous term and they are therefore entitled to declaratory relief. The Magistrate found that the contract was clear and unambiguous. Upon a *de novo* review of the record, however, this court is of the opinion that the contract language is ambiguous and the plaintiffs are entitled to proceed with their claim for declaratory relief.

The first paragraph of the PCS Site Agreement states, in pertinent part, as follows:

> **1. Premises and Use.** Owner leases to Spring Spectrum L.P., a Delaware limited partnership ("SSLP"), the site below:
> *[Check appropriate box(es)]*
> ☐ Real property consisting of approximately 3,750 square feet of land;
> ☐ Building interior space consisting of approximately ____ square feet;
> ☐ Building exterior space for attachment of antennas;
> ☐ Building exterior space for placement of base station equipment;
> ☐ Tower antenna space;
> ☐ Space required for cable runs to connect PCS equipment and antennas,
> in the location(s) ("Site") shown on Exhibit A, together with a non-exclusive easement for reasonable access thereto and to the appropriate, in the discretion of SSLP, source of electric and telephone facilities.[2]

[2] The court is unable to reproduce the pertinent paragraph in precisely the same format as it appears in the contract. For example, in the contract, the text appearing next to the first, second, fourth, and sixth boxes fits on the same line as those boxes and is not carried over to the next line. To the extent possible, however, the

[Doc. # 40, Pl.'s Objection to Magistrate's Report and Recommendation, Ex. A-1.] In the contract between the Trotts and SSLP, the first box, before the description "Real property consisting of approximately 3,750 square feet of land," contains an "x".

The Trotts argue that the words "reasonable access" in the clause immediately following the sixth descriptive choice are ambiguous and submit that parol evidence should be permitted to determine the meaning the parties assigned to that phrase. The defendants argue, and the Magistrate agreed, that this language is not part of the contract between the parties. The Magistrate found that the clause at issue should be read to apply only if the sixth choice is checked. The court believes that the punctuation used and the manner in which the paragraph is spaced mandate a finding that the language in question *is* part of the contract between the parties.

First, the punctuation that ends each of the first five choices is a semi-colon, rather than a period. If the clause that follows the sixth choice was not meant to follow all of the first five choices, then the use of a period at the end of those choices would have been the appropriate punctuation, indicating the end of the sentence. Second, and perhaps more importantly, the spacing of the paragraph clearly indicates that the clause in question does not apply solely to the sixth choice. With the exception of instances where the text does not fill an entire line (such as at the end of a paragraph), the document is fully justified, at both the left and right margins. There is ample blank space at the end of the line on which the sixth box appears to include the first two words of the clause at issue ("in the"), and if the clause was meant to apply only to the sixth choice, these words would appear on the same

court's reproduction of the paragraph matches the formatting of the text in the contract.

line as the sixth box, not on a new line. The line justification of the entire document and the pertinent clause of paragraph one, then, leads to the conclusion that the language at issue, "reasonable access," is part of the contract between the parties.

Having concluded that the language at issue is part of the contract, the court must determine whether the term "reasonable access" is ambiguous. *See Duncan v. Rossuck*, 621 So. 2d 1313, 1314 (Ala. 1993) ("Whether a contract is ambiguous is a question of law for the trial court to determine."). Although the parol evidence rule "forbids the parties to a written contract to supplement the terms of the contract by extrinsic evidence," extrinsic evidence is permitted "to explain the meaning of words contained in the writing." *Walker v. Traughber*, 351 So. 2d 917, 920 (Ala. Civ. App. 1977). A term is ambiguous only if it is "reasonably susceptible to two or more constructions or there is reasonable doubt or confusion as to [its] meaning." *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 309 (Ala. 1999). Commonly used words may be ambiguous in some contexts. *See Walker*, 351 So. 2d at 920 (finding the word "permanent" ambiguous in an employment contract). Both the Trotts and SSLP have advanced arguments as to what "reasonable access" in the context of their agreement means; thus, the term appears to be reasonably susceptible to two constructions and there is some confusion as to its meaning.[3]  Thus, "reasonable

---

[3]The defendant argued, and the Magistrate agreed, that "reasonable access" is defined in a document incorporated by reference in the contract. That document, entitled Memorandum of PCS Site Agreement, "evidences that a lease was made" and summarizes the content of the contract. [Doc. # 40, Pl.'s Objection to Magistrate's Report and Recommendation, Ex. A-4.] While the Memorandum of PCS Site Agreement does state that the contract provides for "grant of easement for unrestricted rights of access" to the leased premises, the court is of the opinion that such does not function as a definition of "reasonable access." Had SSLP, as the drafter of the contract in question, wanted to define "reasonable access" as "unrestricted rights of access," it could have done so more clearly. Furthermore, the court believes that these two provisions could exist side by side if interpreted to address two different issues. For example, "unrestricted rights of access" could be interpreted to mean that SSLP had the right to access the leased property at any time, whereas "reasonable access" could speak

access" is ambiguous, and there exists a genuine issue of fact as to what meaning the parties ascribed to the term. Therefore, the defendant's motion for summary judgment on the plaintiff's claim for declaratory relief is due to be denied.

**B.      Breach of Contract Claims.**

The Magistrate's resolution of the breach of contract claims turned, to some extent, on his conclusion that the term "reasonable access" was not part of the contract between the parties. As the court has concluded otherwise, it will briefly address these claims.

To succeed on their breach of contract claims, the plaintiffs must show: (1) the existence of a valid contract binding the parties in the action, (2) their own performance under the contract, (3) the defendant's non-performance, and (4) damages. *Slade*, 747 So. 2d at 303. The plaintiffs allege that SSLP breached the contract by allowing a third-party (BellSouth) to install equipment at the tower site without obtaining the prior written consent of the Trotts as required by paragraph five of the contract. Additionally, the plaintiffs allege that SSLP breached the contract by failing to construct the type of driveway they claim the parties contemplated by use of the term "reasonable access."

The defendants argue that the plaintiffs cannot prove their own performance under the contract, which required the Trotts to provide SSLP written notice of its alleged breach prior to pursuing any available remedies against SSLP. [Doc. # 40, Pl.'s Opposition to Magistrate's Report and Recommendation, Ex. A-1, ¶¶ 6, 12.] The plaintiffs' only evidence of providing SSLP written notice of the alleged defaults is the deposition testimony of Mr. Trott. Although Mr. Trott initially stated that he "remember[ed] writing a letter one [sic] to

_____

to the means by which SSLP was to access the leased property.

6

the hot line . . . about all the problems [he] was having" [Trott Dep. at 50], apparently

referring to some sort of complaint hot line run by SSLP, he later admitted he was not

certain he had written such a letter.  The pertinent exchange from Mr. Trott's deposition is

as follows:

> Q.  Other than that one letter that you think you might have
> written to Sprint have you written any formal complaints to
> Sprint about any of these problems?
> A.  No.
> Q.  Are you sure that you wrote one letter?
> A.  I believe I did, but I couldn't swear to it.

[Trott Dep. at 55-56.] In order to prove an essential element of the plaintiffs' breach of

contract claims (the plaintiffs' own performance under the contract), Mr. Trott would have

to establish that he sent a written notice to SSLP. As his deposition testimony makes clear,

not only is Mr. Trott unable to show that he sent SSLP a written notice in compliance with

the notice provision of the contract, he cannot "swear" that he ever sent one letter to the so-

called hot line.[4]  Because the vague and uncertain testimony about a letter to a hot line is

insufficient to create a genuine issue of material fact as to the plaintiffs' performance under

the contract, the defendant is entitled to summary judgment on the breach of contract

claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-32 (1986) (holding that where the

non-moving party has failed to make a sufficient showing "to establish the existence of an

element essential to that party's case, and on which the party will bear the burden of proof

at trial," there exist no genuine issues of material fact).

---

[4]The contract requires that any written notice be sent to SSLP at a specific address.  There is no evidence to suggest that the letter Mr. Trott may or may not have sent to a hot line was sent to the address listed in the contract.

## C.   Indirect Trespass Claim.

Although they did not raise an argument with respect to a claim for trespass in their response to the defendant's motion for summary judgment before the Magistrate, the Trotts now contend that the complaint includes a claim for indirect trespass.  While the word "trespass" does not appear on the face of the complaint, the plaintiffs argue that language in Count Five of the complaint (a count alleging fraud) to the effect that the driveway as constructed by SSLP was "causing water to channel across the Plaintiffs' yard" put SSLP on notice of their hidden indirect trespass claim. [Doc. # 1, Compl., Count Five, ¶ 32.] The court does not believe that an isolated reference to channeling, in the middle of what is otherwise a claim for fraud, is sufficient to state a claim for indirect trespass.  Thus, the plaintiffs have not asserted an indirect trespass claim.

The plaintiffs, perhaps anticipating that the court would find that their complaint does not contain a claim for indirect trespass, "ask for leave to amend the Complaint in order to plead the [indirect trespass] cause of action with more particularity." [Doc. # 40, Pl.'s Objection to Magistrate's Report and Recommendation at 24.] However, pursuant to the scheduling order entered by the Magistrate on December 8, 2000, the deadline for adding causes of action was January 30, 2001. [Doc. # 12, Scheduling Order, ¶ 1.] A scheduling order issued pursuant to Rule 16(b) "shall not be modified except upon a showing of good cause." Fed. R. Civ. P. 16(b).  The plaintiffs have failed to show *any* cause, much less good cause, for allowing a modification of the scheduling order to permit them to amend the complaint.  The plaintiffs' request for leave to amend the complaint is therefore due to be denied.

8

## IV.    Conclusion.

In sum, the court adopts in part, and declines to adopt in part, the Magistrate's Report and Recommendation.  The court finds that the defendant's motion for summary judgment is due to be granted with respect to the plaintiffs' breach of contract, fraud, negligence and wantonness, and invasion of privacy claims.  The court further finds that the defendant's motion for summary judgment is due to be denied with respect to the plaintiffs' claim for declaratory relief.  Finally, the court finds that the plaintiffs' request for leave to amend the complaint to add a claim of indirect trespass is due to be denied.  A separate order will be entered.

Done, this ___30th___ of September, 2002.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

9